Blatt & Koppelman, P.C. v Tangredi (2020 NY Slip Op 05025)





Blatt & Koppelman, P.C. v Tangredi


2020 NY Slip Op 05025


Decided on September 23, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 23, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
RUTH C. BALKIN
SYLVIA O. HINDS-RADIX, JJ.


2017-11987
 (Index No. 32384/14)

[*1]Blatt & Koppelman, P.C., appellant,
v
Peter E. Tangredi, etc., respondent.


Schloss & Schloss, PLLC, Airmont, NY (Jonathan B. Schloss of counsel), for appellant.
Law Offices of Anthony R. Tirone, Esq., P.C., White Plains, NY, for respondent.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, the plaintiff appeals from a judgment of the Supreme Court, Rockland County (Gerald E. Loehr, J.), entered March 13, 2020. The judgment, insofar as appealed from, upon a decision of the same court dated August 7, 2017, made after a nonjury trial, is in favor of the plaintiff and against the defendant in the principal sum of only $3,501.44.
ORDERED that on the Court's own motion, the notice of appeal from the decision dated August 7, 2017, is deemed to be a premature notice of appeal from the judgment (see CPLR 5520[c]); and it is further,
ORDERED that the judgment is affirmed insofar as appealed from; and it is further,
ORDERED that one bill of costs is awarded to the defendant.
In 1998, the plaintiff, Blatt & Koppelman, P.C. (hereinafter Koppelman), entered into a written license agreement with Bruce Davis for the exclusive right to receive calls made to the phone number 1-800-LAWYERS (hereinafter LAWYERS) from certain counties in the Hudson Valley in exchange for the payment of certain monthly telephone costs and license fees. The written agreement stated that Davis could not terminate the agreement except for cause based upon a nonpayment by Koppelman.
For more than a decade, Koppelman received the LAWYERS calls and signed up clients accordingly. Then, in or about late 2011, Koppelman sought to assign rights under the agreement to another attorney in exchange for an upfront payment and a percentage of the fees generated from future LAWYERS calls over a fixed period. Neither Koppelman nor Davis retained a copy of the operative 1998 agreement, but it was understood that the agreement did not give Koppelman the right to assign its license to another. As a result, beginning in November 2012 and continuing through January 2013, Koppelman offered Davis proposed written agreements memorializing their relationship to date and including a term whereby Koppelman would be permitted to assign the license. Davis refused to sign.
Meanwhile, around late 2012 and early 2013, the defendant, Peter E. Tangredi, Esq., doing business as Peter E. Tangredi & Associates (hereinafter Tangredi), and Koppelman began negotiating the terms of a transfer from Koppelman to Tangredi of Koppelman's exclusive rights under the license agreement permitting Tangredi to receive the LAWYERS calls from Davis in exchange for $125,000. On an oral agreement, as an initial trial of the service, Koppelman directed LAWYERS callers to call Tangredi's office or provided Tangredi with the caller information. Koppelman and Tangredi agreed to share certain costs of calls and licensing and to share fees on cases originating during this trial period. However, Koppelman and Tangredi understood that Davis's written approval was necessary to effectuate the final assignment.
On January 31, 2013, Koppelman and Tangredi signed an agreement (hereinafter the 2013 agreement), which provided, among other things, that "[Koppelman] has obtained the verbal approval of [Davis] to transfer the licensing rights. This agreement may be cancelled by [Tangredi] if no written approval is obtained within sixty (60) days from today's date. Any fees earned from cases signed during the initial transfer period prior to cancellation shall be shared pursuant to the schedule set forth in this agreement."
In a letter dated March 15, 2013, Davis wrote to Koppelman: "This letter will confirm that I will allow [Tangredi] to have the exclusive right to receive the incoming calls from the same area that you now have, Westchester and Rockland counties, on the telephone number 800 LAWYERS. The relationship will be on a month-to-month basis, in exchange for payment of actual telephone charges plus the license fee that you have been paying, which now stands at $2,249.44 per month." On March 16, 2013, Koppelman sent this letter to Tangredi along with a letter from Koppelman indicating that this constituted Davis's consent pursuant to the 2013 agreement and that Koppelman would be transferring the LAWYERS calls to Tangredi's office on March 22, 2013, at midnight.
In a letter dated March 22, 2013, from Tangredi to Koppelman, Tangredi stated: "I have spoken with Bruce Davis concerning his written consent. While he is amenable to my assuming the contract, he will not give me written approval. I was disappointed with his attitude toward our agreement. Therefore I must request, pursuant to our agreement, that you obtain his written consent in order to move forward. In addition, I must have a copy of the contract between you and Bruce Davis. I cannot be responsible for a contract that I do not have. Both of these requests are necessary in order for me to continue with 1-800-Lawyers."
Koppelman nevertheless had Davis transfer the LAWYERS calls to Tangredi. Tangredi's office began receiving LAWYERS calls. Tangredi did not pay Davis for the months of April, May, or June, and, in June 2013, Davis terminated the service.
On May 27, 2014, Koppelman commenced this action to recover damages for breach of contract and default on a related promissory note, to recover on an account stated, and seeking attorney's fees pursuant to the agreement. Koppelman also sought an accounting. After a nonjury trial, the Supreme Court concluded that Tangredi validly cancelled the 2013 agreement by means of his March 22, 2013 letter, and directed dismissal of all of the causes of action except the third cause of action for an accounting. As to the cause of action for an accounting, the court concluded that Tangredi owed Koppelman $3,501.44 for the cases that were referred while the 2013 agreement was in effect. A judgment in the principal sum of $3,501,44 was entered in favor of Koppelman and against Tangredi. Koppelman appeals.
"In reviewing a determination made after a nonjury trial, this Court's authority is as broad as that of the trial court, and this Court may render the judgment it finds warranted by the facts, taking into consideration that in a close case the trial court had the advantage of seeing and hearing the witnesses" (Reingold v Bowins, 180 AD3d 722, 723).
Here, the Supreme Court found that "the consent which Davis provided—only month to month and not for five years—was not in accordance with the [2013 agreement], such that [Tangredi] was being force[d] to obligate himself to pay $125,000 for something that might [*2]disappear in a month, [and Tangredi] was well within his rights and did timely cancel the [agreement]." We agree with this determination.
The 2013 agreement is silent as to how Davis might approve of the transfer, other than it had to be in writing. At trial, Ronald Koppelman conceded that the month-to-month offer from Davis did not give Tangredi the same rights and benefits contained in Koppelman's operative 1998 license agreement with Davis. Ronald Koppelman also claimed that the first time he learned that Davis would only agree to something month to month was in an email from Davis's office, dated March 13, 2013, containing the text of the letter Davis ultimately signed and sent to Koppelman on March 15, 2013.
We agree with the Supreme Court's determination that the March 15, 2013 letter from Davis to Koppelman did not amount to "written approval" as contemplated in the 2013 agreement. The Davis letter materially restricted the transfer of the licensing rights from perpetual to month-to-month. Thus, pursuant to the 2013 agreement's terms, Tangredi had the authority to cancel the agreement.
We also agree with the Supreme Court's determination that Tangredi did in fact cancel the agreement by means of his March 22, 2013 letter, which stated that Davis would not give Tangredi "written approval," and that Koppelman must obtain Davis's written consent "in order to move forward" and that this was "necessary in order for [Tangredi] to continue with [LAWYERS]" (see Formey v Jones, 303 AD2d 266, 268-269; Waskewich v Redding, 97 AD2d 758, 759; Missir v American Oriental Ice Mfg. Co., 201 App Div 756, 758).
Koppelman's remaining contentions are either without merit or academic.
In light of our determination, we need not reach Tangredi's remaining contentions, which were raised as alternative grounds for affirmance.
SCHEINKMAN, P.J., MASTRO, BALKIN and HINDS-RADIX, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court